UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |  |
|---|---|---|
| RAYMOND DESABATO, JR., and ROBIN DESABATO, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. |
| | ) | 06-40151-FDS |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

---

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

SAYLOR, J.

This is an action for a refund of penalties and interest imposed for late filing and payment of taxes. Plaintiffs Raymond DeSabato, Jr., and Robin DeSabato were assessed $89,736.00 in penalties by the Internal Revenue Service for late filing and late payment of their 2002 federal income tax return. The DeSabatos contend these penalties were wrongfully assessed and seek a full refund.

The United States has filed for summary judgment.[1] For the reasons stated below, the motion will be granted in part and denied in part.

I.     **Factual Background**

The facts are stated in the light most favorable to the plaintiffs.

Plaintiffs Raymond and Robin DeSabato are a married couple who reside in

---

[1] Plaintiffs' complaint names both the IRS and the United States as defendants. Any action against an agency of the United States is properly considered as an action against the United States. *See, e.g., Balser v. Department of Justice, Office of U.S Trustee*, 327 F.3d 903, 907 (9th Cir. 2003).

Southborough, Massachusetts.  On April 14, 2003, the DeSabatos timely applied to the IRS for a six-month extension of time to file their 2002 federal income tax return.  That request was apparently granted.  Plaintiffs' tax return was accordingly due on October 15, 2003.

Plaintiffs final estimated 2002 federal income tax payment, however, was still due on April 15.  Their April 14 request for an extension also included a check in the amount of $230,000.  Plaintiffs' accountant informed them that this check would be enough to cover their 2002 income tax liability.  On April 14, shortly before sending the filing extension application and the check, the DeSabatos made cash transfers into their Fleet Bank checking account of $230,000 and $25,000.  The second transfer was to pay their 2002 Massachusetts income tax liability.

In May 2003, the DeSabatos received their April bank statement.  This statement revealed that the IRS had not cashed the $230,000 check.  The $25,000 check sent on the same day for their 2002 Massachusetts income tax had been cashed, however, and had been posted to the DeSabatos' account on April 22.

After receiving the bank statement, Mr. DeSabato immediately called the IRS and asked if he should stop payment on the check and send a replacement.  He was informed by a customer service representative that checks sometimes get "caught up," and that he should wait another two weeks for the check to clear.

On June 6, 2003, after two weeks had passed, Mr. DeSabato again called the IRS customer service line.  This time, a representative informed Mr. DeSabato that he should stop payment on the check.  He then inquired as to whether another check should be sent.  According to Mr. DeSabato, the representative informed him that he could send a replacement check when he finished and filed his 2002 income tax return.  He further asked if he would be subject to any

penalties or interest if he followed the advice of the representative. Plaintiffs contend that Mr. DeSabato was assured by the representative that no interest or penalties would be incurred.[2] He was told that a note would be placed in his file for further reference if this issue should ever come up again. Mr. DeSabato was also told to keep the stop payment receipt as evidence of the lost check in order to prevent interest and penalties. Mr. DeSabato directed Fleet Bank to stop payment on the check for $230,000 on or about June 9, 2003.

The DeSabatos did not file their 2002 return by October 15, 2003, nor did they seek any additional extension of time. Furthermore, they did not send a replacement check for their 2002 income tax liability by October 15. Instead, they submitted their 2002 return (and the payment due as a result of that return) on August 19, 2004—ten months after the expiration of the extended filing deadline.[3]

In January 2005, the IRS assessed penalties against plaintiff for (1) failure to timely file their 2002 tax return pursuant to 26 U.S.C. §6651(a)(1), and (2) failure to timely pay their 2002 income tax liability pursuant to 26 U.S.C. §6651(a)(2). At that time, the interest and penalties assessed totaled $88,058.63. The IRS retained the DeSabatos' 2003 federal income tax refund of $60,736 and applied it toward the assessed interest and penalties.[4]

---

[2] Plaintiffs concede, however, that Mr. DeSabato never asked the IRS representative for any advice regarding when to file their 2002 tax return. Mr. DeSabato also never indicated to the representative that the DeSabatos would not file their 2002 return by the October 15, 2003 extended deadline.

[3] The DeSabatos contend that the reason for their late filing was reliance on the June 2003 telephone conversation with the unidentified IRS representative. The IRS, however, contends that Mr. DeSabato gave other reasons for the delay in his deposition: (1) a delay in receiving correct and complete tax schedules concerning business entities controlled by the DeSabatos, (2) business travel, (3) family illness, and (4) legal issues involving family members.

[4] Calculation of tax penalties under 26 U.S.C. §6651(a)(1)-(2) are based on (1) the underlying tax liability for the year in question and (2) the number of months a taxpayer has failed to file a return and/or pay his

On January 16, 2005, Mr. DeSabato wrote a letter to the IRS requesting an abatement or adjustment of the penalties and interest associated with the 2002 federal income tax filing. This request was rejected by the IRS by letter dated March 1, 2005.

On March 8, 2005, Mr. DeSabato wrote a letter to the IRS's Service Penalty Appeal Coordinator explaining the situation. He appended to this letter copies of his bank statement showing the $230,000 transfer and the request for an extension. The IRS rejected this appeal for an adjustment or abatement on October 24, 2005. At that point, the remaining amount owed was $28,890.40.

On December 14, 2005, the DeSabatos sent the IRS a check in the amount of $29,000 as payment on the remaining balance of the penalties and interest related to their 2002 federal income tax. On that same date, the DeSabatos, through their counsel, filed a formal claim with the IRS requesting a refund in the amount of $89,736. That request was rejected on January 3, 2006. The plaintiffs now bring this action to obtain a refund of penalties from the IRS in the amount of $89,736.

## II.   <u>Analysis</u>

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact

---

tax liability. The record does not reveal whether the IRS calculated the tax penalty (under either statutory subsection) based on the April 2003 to August 2004 time period or a shorter time period (e.g., June 2003 to August 2004).

finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

### A.        Penalty Assessed for Failure to Timely File Return

The first issue is the penalty assessed by the IRS for failure to timely file a tax return.  The relevant statute, 26 U.S.C. § 6651(a)(1), provides:

> In case of failure . . . to file any return . . . on the date prescribed therefor (determined with regard to any extension of time for filing), unless it is shown that such failure is due to reasonable cause and not due to willful neglect, there shall be added to the amount required to be shown as tax on such return 5 percent of the amount of such tax if the failure is for not more than 1 month, with an additional 5 percent for each additional month or fraction thereof during which said failure continues, not exceeding 25 percent in the aggregate.

It is undisputed that plaintiffs' 2002 tax return was due on October 15, 2003, and could be filed up to that date without penalty.  It is similarly undisputed that plaintiffs actually filed the return on August 19, 2004—more than ten months after the October deadline.  Plaintiffs contend, however, that the June 2003 advice they received telephonically from an IRS agent constitutes "reasonable cause" under the statute for their failure to file a return by October 15, 2003, and that therefore the penalties should be abated.[5]

Taxpayers seeking waiver of §6651(a)(1)-(2) penalties bear a "heavy burden of proving both (1)  that the failure did not result from 'willful neglect,' and (2) that the failure was due to reasonable cause." *Francis P. Harvey and Sons, Inc. v. United States*, 2004 WL 2915309 *1, *9

---

[5]  Plaintiffs' memorandum opposing summary judgment almost exclusively discusses plaintiffs' reasons for their failure to timely *pay* their tax liability.  Their failure to timely *file* a tax return is barely mentioned. Plaintiffs are apparently proceeding upon the unstated contention that the IRS representative's advice to "send in the replacement check when [plaintiffs] finished their 2002 tax return" was a blanket authorization for the plaintiffs to file their return (without penalty) any time they wished.

(D. Mass. 2004) (quoting *United States v. Boyle*, 469 U.S. 241, 245 (1985)).[6]

As a general matter, reliance on erroneous advice from a government official does not estop the government from enforcing the law, even if contrary to the advice given. *See, e.g., Heckler v. Community Health Services*, 467 U.S. 51, 63-65 (1984). This principle applies with particular force when government advice is oral, as oral comments do not permit the Government to "ensure[e] that governmental agents stay within the lawful scope of their authority." *Id.* at 65. Based on the general principle enunciated in *Heckler*, many courts have held specifically in the IRS context that a taxpayer cannot establish reasonable cause based upon purported reliance on advice from IRS personnel. *See, e.g., Trans-Serve, Inc. v. United States*, 2006 WL 2588008 *1, *10 (W.D. La. 2006) (citing *Posey v. United States*, 449 F.2d 228, 234 (5th Cir. 1971)); *United States v. Red Stripe, Inc.*, 792 F. Supp. 1338, 1345 (E.D.N.Y. 1992). Other courts, in evaluating the affirmative defense of equitable estoppel, have emphasized that taxpayer reliance on IRS advice must be *reasonable*. *United States. v. Guy*, 978 F.2d 934, 938 (6th Cir. 1992); *In Re Larson*, 862 F.2d 112, 115 (7th Cir. 1988); *L.E.F., Inc., v. United States*, 1997 WL 1037879 *1, *5 (E.D. Mich. 1997) (taxpayer reasonably relied upon IRS advice that relayed information the taxpayer had no other way of obtaining); *see also Akbarin v. Immigration and Naturalization Service*, 669 F.2d 839, 842-844 (1st Cir. 1982) (estoppel claim against the government in an

---

[6] Treasury Department regulations provide that "[A] taxpayer who wishes to avoid the addition to the tax for failure to file a tax return or pay tax must make an affirmative showing of all facts alleged as reasonable cause for his failure to file such return or pay such tax on time in the form of a written statement containing a declaration that it is made under penalties of perjury." 26 C.F.R. § 301.6651-1(c)(1). Failure to submit such a written statement to the IRS precludes a plaintiff from making a "reasonable cause" showing for the first time in federal court. *See Brown v. United States*, 43 Fed. Cl. 463, 467 (1999).

As previously noted, plaintiffs did not present any theories involving delays in receiving tax documents, personal illness, business travel, or family legal issues to the IRS at any time, and have not advanced these theories in opposition to summary judgment.

immigration appeal requires reasonable reliance on government conduct).[7]

These principles are fatal to plaintiffs' claim.  Even if this Court assumed that plaintiffs' reliance on oral advice from a government agent was not a *per se* bar to establishing reasonable cause, such reliance in this context was clearly unreasonable.  At the time plaintiffs received the oral advice, they had already applied for a filing extension and knew when their 2002 return was due—October 15, 2003.  Moreover, any advice received was directed toward resubmission of plaintiffs' tax payment, *not* the filing of their return.  And when the IRS representative told plaintiffs that they would be subject to no penalties or interest if they "acted in accordance with the IRS representative's guidance," plaintiffs had not told the representative that they did not intend to file their 2002 return until August 2004.  Indeed, according to plaintiffs' position, they could not be penalized even if they filed their return years—or, indeed, decades—afterwards. Even crediting plaintiffs' characterization of the conversation, such reliance is clearly unreasonable.

Plaintiffs have not shown reasonable cause for their failure to timely file their 2002 federal income tax return.  Furthermore, even at a summary judgment standard, plaintiffs have not met their burden of showing that their failure to file was not "conscious, intentional failure or reckless indifference" that constituted willful neglect.  *Boyle*, 469 U.S. at 245-246.  Summary judgment is

---

[7] Congress has provided a statutory remedy for taxpayers who are adversely affected by erroneous *written* advice from the IRS.  *See* 26 U.S.C. § 6404(f).  For a taxpayer to receive an abatement of penalty under this statute, the taxpayer must have relied on written advice that ". . . did not result from a failure by the taxpayer to provide adequate or accurate information."  *Id.* at § 6404(f)(2)(B).  Plaintiffs' failure to inform the IRS representative that they would be filing their return ten months after the filing deadline would thus be fatal to plaintiffs' claim even if plaintiffs had received the disputed advice in writing.

granted to the defendant as to any penalties assessed against plaintiffs pursuant to § 6651(a)(1).[8]

### B.   Penalty Assessed for Failure to Timely Pay Tax Liability

#### 1.   Failure to Pay Penalty Assessed Subsequent to October 15, 2003

The second issue is the penalty assessed by the IRS for failure to timely pay the tax

liability.  The relevant statute, 26 U.S.C. § 6651(a)(2), provides:

> In case of failure . . . to pay the amount shown on tax on any return . . . on or
> before the date prescribed for payment of such tax (determined with regard to any
> extension of time for payment), unless it be shown that such failure is due to
> reasonable cause and not due to willful neglect, there shall be added to the amount
> shown as tax on such return .5 percent of the amount of such tax if the failure is
> for not more than 1 month, with an additional .5 percent for each additional month
> or fraction thereof during which such failure continues, not exceeding 25 percent
> in the aggregate.

Barring an extension of time in which to make the payment, the tax liability was due on

April 15, 2003.  The IRS does not dispute that plaintiffs made a valid and good faith effort to

remit their estimated 2002 liability before the April 15, 2003 deadline.  Plaintiff has submitted

bank statements that establish the check was written on April 14, and it was sent in the very same

envelope as plaintiffs' filing deadline extension request (which was apparently processed and

granted).[9]

---

[8]  The IRS correctly notes that plaintiffs cannot escape the "reasonable cause" framework for abatement of penalties by claiming that the IRS representative (who gave the oral advice in June 2003) somehow waived or compromised the penalties at issue.  Only the Secretary of the Treasury, or his authorized delegate, can compromise a tax liability, and only through the mechanisms set forth by regulation.  I.R.C. § 7122(a); 26 C.F.R. ("Treas. Reg.") § 302.7122-1(d)(1); *see also Luxton v. United States*, 340 F.3d 659, 663 (8th Cir. 2003).  An IRS representative on a help line has no authority to compromise or waive penalties.

[9]  In its internal "Appeals Case Memorandum" that preceded the IRS's October 24, 2005 decision to deny the plaintiffs' administrative appeal, the IRS stated:  "With good intention of paying a majority of the tax due, taxpayers remitted payment with the extension.  The loss (said extension and check) was not the taxpayers' fault."

If the IRS did indeed penalize plaintiffs pursuant to § 6651(a)(2) for any period between April 15 (when plaintiffs first attempted to make the payment) and June 9 (when plaintiffs stopped payment on the check, in acknowledgment that it was lost), there is a serious question as to whether disappearance constitutes "reasonable cause" for the abatement of at least some of that time period's assessed penalty.  However, there was no reasonable cause for plaintiffs' failure to pay their tax liability *after* June 9, 2003.  And under no circumstances was it reasonable for plaintiffs not to make the payment by October 15, 2003.

Plaintiffs' theory that they could pay whenever they filed their return again runs afoul of the heavy general presumption that erroneous advice from government officials does not excuse compliance with the law.  *Heckler*, 467 U.S. at 63-64.  The oral nature of the advice further undermines plaintiffs' reliance.  *Id.* at 65.  And when plaintiffs were told they would be assessed no penalties for waiting to send a replacement check until they sent their tax return, the IRS representative did not know plaintiffs planned to file their return ten months after the deadline.  Finally, it was not "reasonable reliance" for plaintiffs to believe that the IRS advice allowed them to pay their tax liability at any point of their choosing after October 2003 and suffer no penalty.[10]  Summary judgment will be granted to the defendant as to all penalties and interest assessed pursuant to §6651(a)(2) from June 9, 2003 to August 19, 2004.[11]

---

[10]  In fact, plaintiffs' own characterization of the IRS conversation belies this interpretation.  Plaintiffs state that the IRS representative told them to send a replacement check when they filed their tax return.  They knew that their tax return had to be filed by October 15, 2003.  Even if there were no legal barriers to reliance on this advice, it established (at most) that plaintiffs had until October 15 to remit payment to the IRS.

[11]  Plaintiffs also contend that their good faith attempt to timely remit payment creates a genuine issue of material fact sufficient to defeat summary judgment.  Specifically, plaintiffs assert that this court must assume for summary judgment purposes that the IRS actually *did* receive the initial $230,000 payment.  The Court cannot, however, assume a factual matter as to which there is no evidentiary support.

Summary judgment cannot be granted, however, as to the § 6651(a)(2) penalties (if any) assessed prior to June 9, 2003. It is undisputed that in April 2003 plaintiffs attempted to make good faith timely payment of their estimated tax liability. Whether the IRS's failure to credit that payment was the result of mishandling by IRS employees is unclear, but plaintiffs plainly could establish "reasonable cause" for a penalty abatement under § 6651(a)(2) for at least a limited period of time. *Accord Boyle*, 469 U.S. at 243 & n.1 (IRS considers "unavoidable postal delays" to be reasonable cause for failure to file a return).

Viewing the facts in the light most favorable to the plaintiff, there is a genuine issue of material fact as to whether the delay prior to June 9, 2003, in resubmitting payment could be justified by reasonable cause. Summary judgment will therefore be denied as to any § 6651(a)(2) penalties assessed for any months prior to June 9, 2003.

## III.  Conclusion

Defendant's motion for summary judgment as to that portion of the penalty assessed pursuant to 26 U.S.C. § 6651(a)(1), and as to any portion of the penalty assessed pursuant to 26 U.S.C. § 6651(a)(2) for any time period between June 9, 2003 and August 19, 2004, is GRANTED. The motion as to any portion of the penalty assessed pursuant to 26 U.S.C. § 6651(a)(2) for any time period between April 15, 2003 and June 9, 2003, is DENIED.

**So Ordered.**

　　　　　　　　　　　　　　　　　　　　　　　　　　　 /s/ F. Dennis Saylor

---

Plaintiffs have not alleged that two $230,000 payments have actually been deducted from their bank account. Instead, they appear to be asserting that the standard for federal tax liability satisfaction is the mailing of payment, not the actual transfer of money to the IRS. Even assuming that the IRS mishandled the check, plaintiffs are not entitled to an abatement of penalties for all time.

F. Dennis Saylor IV

Dated:  March 6, 2008                United States District Judge